UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TONY C. FRANKLIN,

                Plaintiff,

    v.                                         Case No. 18-cv-1730-pp

JEFFREY MANLOVE, CHRYSTAL MELI,
KYLE DEMERS, JOEL SANKEY,
and BRIAN FOSTER,

                Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 69) AND DISMISSING DEFENDANTS DEMERS AND SANKEY**

---

Tony C. Franklin, who is incarcerated at Waupun Correctional Institution, sued under 42 U.S.C. §1983 alleging that officials at Waupun violated his Eighth Amendment rights. Dkt. No. 60. Two of the defendants have moved for summary judgment in their favor on the ground that the plaintiff failed to exhaust his administrative remedies against them before bringing his complaint. Dkt. No. 69. The plaintiff opposes the motion. Dkt. No. 76. The court will grant the motion and dismiss the two defendants who filed it.

**I.    Facts**

    A.    <u>Procedural Background</u>

The plaintiff filed his original complaint on October 30, 2018; at the time, he was representing himself. Dkt. No. 1. The next day, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $8.88 by November 21, 2018. Dkt. No. 6. The court received that fee on December 26, 2018, after the

court had granted the plaintiff's request for an extension of time to pay it. Dkt. Nos. 9, 11. About a month later, the court received from the plaintiff an amended complaint. Dkt. No. 12. On July 12, 2019, the court screened the amended complaint under 28 U.S.C. §1915 and ordered defendants Jeffrey Manlove and Chrystal Meli to respond. Dkt. No. 14. The court then referred the case to Magistrate Judge William E. Duffin for pretrial management. Dkt. No. 15. On September 10, 2019, defendants Manlove and Meli timely answered the complaint. Dkt. No. 21.

On December 19, 2019, after several hearings and after litigation over various discovery motions filed by the plaintiff, Judge Duffin granted the plaintiff's motion to recruit counsel to assist him. Dkt. No. 37. Judge Duffin stayed the deadlines for completing discovery and filing dispositive motions until counsel could be appointed. Id. On May 1, 2020, Judge Duffin entered an order indicating that current counsel had agreed to represent the plaintiff but noting that the plaintiff first must sign and return to the court the Agreement to Reimburse the *Pro Bono* Fund. Dkt. No. 51. Counsel entered their notices of appearance a few weeks later. Dkt. Nos. 53, 54.

On August 3, 2020, after a July 30, 2020 telephonic status conference with the lawyers for both sides, dkt. no. 57, Judge Duffin issued an amended scheduling order allowing the plaintiff (now represented) to file an amended complaint by September 30, 2020. Dkt. No. 58. The court received the plaintiff's second amended complaint on that date. Dkt. No. 60. About three weeks later, Judge Duffin screened the amended complaint and allowed the plaintiff to proceed on Eighth Amendment claims against defendants Manlove and Meli and

new defendants Kyle Demers, Joel Sankey and Warden Brian Foster. Dkt. No. 61. On December 21, 2020, defendants Demers, Sankey and Foster timely answered the amended complaint. Dkt. No. 65.

On December 29, 2020, Judge Duffin amended the scheduling order at the parties' request and ordered the parties to complete discovery by July 31, 2021 and to file dispositive motions by August 31, 2021. Dkt. No. 67. Three days later, the clerk's office returned the case to this court for further proceedings. Dkt. Entry of 1/1/2021. On February 16, 2021, the defendants moved for partial summary judgment on the grounds that the plaintiff failed to exhaust his administrative remedies for his claims against Demers and Sankey. Dkt. No. 69. The defendants then asked this court to stay the deadlines for completing discovery and filing dispositive motions. Dkt. No. 74. The court granted that motion. Dkt. No. 75.

B.    Factual Background

The plaintiff was incarcerated at Waupun Correctional Institution during the events alleged in the amended complaint. Dkt. No. 71 at ¶1. On February 2, 2018, the plaintiff signed a Chronic Pain Management Agreement with defendant Dr. Manlove. Dkt. No. 81 at ¶9; Dkt. No. 77-2 at 2. The plaintiff agreed to follow Manlove's treatment regime, including his prescription of Pregabalin for the plaintiff's pain. Dkt. No. 81 at ¶10; Dkt. No. 77-3 at 2.

1.    *Conduct Report No. 3150416*

On July 15, 2018, C.O. Demers issued the plaintiff Conduct Report No. 3150416 for misuse of medication. Dkt. No. 71 at ¶3. The conduct report says Demers gave the plaintiff two pills of Bupropion, which the plaintiff placed in his

3

mouth. Dkt. No. 73 at 1. The plaintiff then "took a small sip of water and opened his mouth." Id. Demers directed the plaintiff "to lift his tongue and show me his mouth." Id. The plaintiff "quickly looked down and drank the rest of his water" and then "appeared to make a swallowing motion with his throat." Id. The plaintiff refused to open his mouth or lift his tongue. Id. Demers ordered the plaintiff to lock in, which the plaintiff did. Id. at 2. Two lieutenants later took the plaintiff to the restricted housing unit to be placed in temporary lockup status. Id. Waupun officials provided the plaintiff a notice of his right to a disciplinary hearing. Id. at 3. The plaintiff waived his right to a contested major disciplinary hearing but did not admit that he was guilty. Id.

Although the plaintiff waived his rights to a disciplinary hearing, Captain Westra (who is not a defendant) held a hearing on the conduct report on July 19, 2018. Id. at 4. The plaintiff made a statement, saying that he was not guilty and that he had "been on meds for 4 years. I told him [Demers] my med got stuck in my throat and I took another sip [of water]. He said no, no that ain't it. He was on this crank mode that morning." Id. Westra found "the conduct report to be credible, since the staff member writing the report has no reason to fabricate the information set forth." Id. Westra found the plaintiff's statement "to be less credible." Id. He concluded it was "more likely than not this inmate committed this act" and found the plaintiff guilty of misusing his medication. Id. Westra imposed a disposition of 30 days cell confinement, 60 days loss of recreation and 60 days loss of canteen. Id. Waupun Litigation Coordinator Yana Pusich provided a sworn declaration that she "found no record of an appeal of the disposition for Conduct Report No. 3150416." Dkt. No. 71 at ¶5; Dkt. No. 72 at ¶7.

4

On July 18, 2018, while the plaintiff was in temporary lockup awaiting the disciplinary hearing, he submitted a request for health services stating that a corrections officer refused to give him his nighttime pain medication, Pregabalin, despite his complaints of pain. Dkt. No. 81 at ¶13; Dkt. No. 77-5 at 2. On July 31, 2018, Manlove entered a clinic note discontinuing the plaintiff's prescription of Pregabalin because of his disciplinary conviction for misusing his Bupropion. Dkt. No. 81 at ¶15; Dkt. No. 77-7 at 2. The same day, the plaintiff submitted another request for health services stating that the nurses did not provide him Pregabalin at night for his pain that day or the previous day. Dkt. No. 81 at ¶18; Dkt. No. 77-8 at 2. He said he was "suppose[d] to get it [Pregabalin] noon, PM, & H.S. every day!" Dkt. No. 77-8 at 2. The next day, a registered nurse responded to his request and wrote, "Not anymore. It has been discontinued." Id.

2.    *Conduct Report No. 3149816*

On August 1, 2018, C.O. Sankey issued the plaintiff Conduct Report No. 3149816 for threats, disobeying orders, disruptive conduct and misuse of medication. Dkt. No. 71 at ¶6. The conduct report states that on July 30, 2018, the plaintiff came to the sergeant's cage, where Sankey was stationed, to receive his noon medication. Dkt. No. 73-1 at 1. After confirming the plaintiff's identification and medication, Sankey gave the plaintiff two tablets of Bupropion. Id. The plaintiff placed the tablets into his mouth, took a drink of water "and appeared to swallow the tablets." Id. The plaintiff opened his mouth to show Sankey that he had swallowed the pills but refused to lift his tongue. Id. Sankey directed the plaintiff to lift his tongue, but the plaintiff again "refused and took a second drink of water." Id. Sankey again told the plaintiff to open his mouth and

lift his tongue, but the plaintiff continued to drink water and refuse the order. Id.
When the plaintiff finished the water, he opened his mouth and lifted his tongue.
Id. Sankey "observed a large blue streak of residue on the bottom of Inmate
Franklin's tongue from Inmate Franklin placing the pills under his tongue for an
extended period of time." Id. at 1–2. Demers, who also was present, ordered the
plaintiff to lock-in, which he did. Id. at 2.

Once all other inmates had received their noon medication, the plaintiff
began to shout "several threatening and disrespectful statements" at the officers.
Id. The conduct report says the cell hall became quiet as the other inmates
listened to the plaintiff shout his threats and comments. Id. The conduct report
quotes several of the plaintiff's threats, including "I'm gonna flatline your bitch
ass" and "You try anything Demers, I'm gonna beat the f*** out of you!" Id.
Sankey told the plaintiff to stop yelling and threatening staff, but the plaintiff
refused and "continued to make similar statements." Id. The plaintiff then
urinated on the floor outside of his cell. Id. A lieutenant and other officer arrived
and took the plaintiff to the restricted housing unit. Id.

Waupun officials provided the plaintiff a notice of his right to a disciplinary
hearing on the conduct report. Dkt. No. 73-1 at 3. The plaintiff agreed to accept
an uncontested major disposition on the conduct report and signed the notice. Id.
The defendants assert that by agreeing to an uncontested major disposition, the
plaintiff waived his right to appeal Conduct Report No. 3169816. Dkt. No. 71 at
¶8; Dkt. No. 72 at ¶10.

### 3. *Inmate Complaint*

On August 8, 2018, the plaintiff submitted an inmate complaint, asserting that his "Pregablin was discontinued," and asking that it be given back to him "because [he] did nothing to get it taken." Dkt. No. 81 at ¶19; Dkt. No. 77-9 at 2. The plaintiff complained that the Pregabalin "wasn't mentioned in [his] conduct report or [he] never was accused of misusing [it]." Dkt. No. 77-9 at 2. He explained that on July 31, 2018 he'd submitted a request to Manlove and the Health Services Unit manager, Ms. Marchant, about the Pregablin being discontinued "without being notified." Id. He stated that R.N. Jensen had responded to one of his requests, "saying 'not anymore. It's been discontinued.'" Id. The plaintiff said his legs had "been hurting very bad," and he needed his Pregabalin medication because that was what he took the medication for. Id.

An inmate complaint examiner acknowledged receipt of the plaintiff's complaint on August 9, 2018. Dkt. No. 84 at 2. The examiner contacted the Health Services Unit manager, who reported that the plaintiff's medication was discontinued when he was found guilty of misusing his Bupropion. Id. The complaint examiner recommended denying the plaintiff's complaint, and the reviewing authority agreed and dismissed the complaint. Id. at 2, 4.

The plaintiff appealed the dismissal of the inmate complaint. Dkt. No. 81 at ¶20; Dkt. No. 77-10 at 2. He contested the result of his conduct reports, stating that he "never got cau[gh]t misusing any of my medication." Dkt. No. 77-10 at 2. In the appeal, the plaintiff explained that he disagreed with the discontinuation of his Pregabalin because he "never got caught misusing any of [his] medication." Id. He stated that the conduct reports written by Demers and Sankey were "pure

7

speculation" that he was trying to cuff his medications when he didn't. Id. at 2-3. He also noted that the medication Demers and Sankey claimed he misused was not the Pregabalin (he asserted that the Bupropion had been prescribed by his psychiatrist for depression and PTSD). Id. at 3. While the plaintiff agreed that he had signed the chronic pain management agreement, he asserted that per the agreement the Pregabalin could be taken away from him if he abused it and he reiterated that he had not abused it. Id. The plaintiff asserted that "[n]one of [his] medication never should of been discontinued on pure speculation." Id. A corrections complaint examiner recommended dismissing the plaintiff's appeal, and the Office of the Secretary accepted that decision and dismissed the appeal. Dkt. No. 84 at 6–7.

C.     Allegations in the second amended complaint

The second amended complaint alleged that the defendants failed to provide the plaintiff adequate medical treatment for disk displacement in his lumbar spine and cervical spine degeneration. Dkt. No. 60 at 1. It alleged, among other things, that on July 15, 2018, Demers accused the plaintiff of "mouthing" his Bupropion and issued a conduct report. Id. at ¶20. The complaint asserted that the plaintiff denied attempting to mouth any medication. Id. at ¶20. It alleged that because of the conduct report issued by Demers, Manlove discontinued the plaintiff's Pregabalin. Id. at ¶22. The complaint alleged that on August 1, 2018, Demers and Sankey again accused the plaintiff of mouthing his medication, "although no evidence existed to support such an allegation." Id. at ¶26.

The complaint asserted a claim against Demers and Sankey for deliberate indifference to the plaintiff's serious medical need, asserting that they knew "that

8

by denying Plaintiff the only form of 'treatment' he had been receiving in the form of nerve pain medication he would be in a constant state of pain, but disregarded that risk and acted with deliberate indifference to Plaintiff's serious medical needs." Id. at ¶42.

Judge Duffin allowed the plaintiff to proceed "on an Eighth Amendment claim of deliberate indifference against Demers and Sankey." Dkt. No. 61 at 8. Judge Duffin wrote,

> [The plaintiff] alleges that they were aware of his need for medication to treat his substantial pain and fabricated reasons to deprive him of these medications, perhaps maliciously in light of the alleged verbal harassment, needlessly prolonging his suffering. (ECF No. 60, ¶¶26, 42.) Because, at its core, the Eighth Amendment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,'" *Pyles* [*v. Fahim*], 771 F.3d [403,] at 408 [(7th Cir. 2014)], at this stage [the plaintiff] sufficiently alleges a claim against Demers and Sankey.

Id. at 8-9.

## II. Discussion

### A. Summary Judgment Standard

A party is entitled to summary judgment if he shows that there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005). The nonmovant must provide more than *allegations* to defeat a motion for summary judgment; he must present enough admissible *evidence* to create a genuine issue of fact. See Hoeft v. Kasten, 691 F. Supp. 2d 927, 931 (W.D. Wis.), aff'd, 393 F. App'x 394 (7th Cir. 2010) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)).

### B.    Exhaustion

Under the Prison Litigation Reform Act, an inmate cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see Woodford v. Ngo, 548 U.S. 81, 93 (2006). To comply with §1997e(a), an inmate must "properly take each step within the administrative process." Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The Seventh Circuit Court of Appeals applies a "strict compliance approach to exhaustion," Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006), and expects inmates to adhere to "the specific procedures and deadlines established by the prison's policy," King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015) (citing Woodford, 548 U.S. at 93). That means that if the plaintiff failed to complete any

step in the institution's exhaustion process before bringing his lawsuit, the court must dismiss the plaintiff's claims. See Perez v. Wis. Dep't of Corrs., 182 F.3d 532, 535 (7th Cir. 1999). "Substantial compliance with administrative remedies" does not satisfy the PLRA, Farina v. Anglin, 418 F. App'x 539, 543 (7th Cir. 2011) (citing Booth v. Churner, 532 U.S. 731, 739 (2001), and Dole, 438 F.3d at 809), and there is no "futility exception" to the PLRA's exhaustion requirement, Perez, 182 F.3d at 537 (citing Greene v. Meese, 875 F.2d 639, 641 (7th Cir. 1989)); see Booth, 532 U.S. at 741. Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. See Pavey v. Conley, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

Wisconsin has established an Inmate Complaint Review System (ICRS) to allow incarcerated persons to file complaints about policies, rules, living conditions and staff actions at their institutions. Wis. Admin. Code §DOC 310.06. Incarcerated persons must exhaust all administrative remedies that the Department of Corrections has promulgated by rule before commencing a civil action against an officer, employee, or agent of the DOC. Id. §310.05. Although an incarcerated person "need not lay out the facts, articulate legal theories, or demand particular relief," the inmate complaint must "alert[] the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002).

Incarcerated persons may raise issues about a conduct report or disciplinary issue through the ICRS only after first exhausting the disciplinary appeal process detailed in Wis. Admin. Code chapter DOC 303. Wis. Admin. Code

11

§DOC 310.06(2); see Kidd v. Hepp, No. 18-CV-831-JDP, 2021 WL 796615, at *2 (W.D. Wis. Mar. 2, 2021) (citing §310.06(2)(b)) ("[I]nmates can't use the normal grievance system to raise issues related to conduct reports unless the inmate has already exhausted his disciplinary appeals."). To exhaust the disciplinary appeal process related to a conduct report of a contested major disposition, an inmate must raise his grievance during the disciplinary hearing and again on appeal to the warden. Wis. Admin. Code §DOC 303.82(1). An inmate must appeal a disciplinary disposition, including alleged procedural errors, to the warden within ten days of the decision. Wis. Admin. Code §DOC 303.82(1). The warden reviews the records and forms related to the appeal and renders a decision within sixty days. Id. §303.82(2). The warden's decision is final for any appeal challenging the sufficiency of the evidence. Id. §303.82(4). Once the warden gives a decision on the appeal, the incarcerated person may challenge *only procedural errors* through the ICRS. Id. In other words, if an inmate "'wants to challenge the validity of the conduct report, he must do so through the disciplinary process rather than ICRS.'" Ravenwood-Alexander v. Beahm, No. 17-CV-7-PP, 2018 WL 4188472, at *7 (E.D. Wis. Aug. 31, 2018) (quoting Rivera v. Lindmeier, No. 13-C-124, 2013 WL 6806188, at *3 (E.D. Wis. Dec. 20, 2013), aff'd, 560 F. App'x 619 (7th Cir. 2014)). An inmate "may not appeal an uncontested major disposition to which he or she has agreed." Wis. Admin. Code §DOC 303.78(5).

C.     Analysis

The defendants assert that the plaintiff failed to exhaust his administrative remedies on his claim "that Demers and Sankey issued conduct reports for fabricated reasons to deprive [the plaintiff] of his pain medications." Dkt. No. 70

at 6-7. They contend that the plaintiff failed to follow the disciplinary appeal process in Chapter 303 for either conduct report. Id. at 7. They assert that the plaintiff did not appeal the disciplinary disposition for conduct report 3150416, in which Demers said the plaintiff had misused his medication. Id. They further assert that because the plaintiff agreed to an uncontested disposition for conduct report 3149816, he waived his right to appeal that disciplinary disposition or to challenge the conduct report through a disciplinary appeal. Id.

   1. *Conduct Report No. 3150416*

  The prison provided the plaintiff a disciplinary hearing for conduct report 3150416, which charged the plaintiff with misusing his medication. Dkt. No. 73 at 4. Captain Westra determined that the plaintiff was guilty of the conduct alleged in the report and imposed a disciplinary disposition. Id. At the hearing, the plaintiff stated that he was not guilty, that he had been on medication for four years, that he had told Demers the pills "got stuck in [his] throat" and that Demers had responded, "no, no, that ain't it." Id. He alleged that Demers "was on this crank mode that morning[.]" Id.

  The second amended complaint implies that Demers and Sankey knew that the plaintiff was receiving nerve pain medication, knew that he needed it to prevent him from being in constant pain, knew that denying him the medication would result in his being in constant pain. Dkt. No. 60 at ¶42. It implies that Demers and Sankey knew that accusing the plaintiff of abusing his depression medication would result in his being denied the nerve pain medication, but that they disregarded the risk. Id. To exhaust his remedies on that claim, the plaintiff needed to assert it in his inmate complaint, raise it during the disciplinary

hearing and raise it again on appeal from the dismissal of the complaint. He did not.

At the hearing the plaintiff asserted that his medication got stuck in his throat, and Demers "was on this crank mode that morning." Dkt. No. 73 at 4. He did not assert that Demers knew that he was on nerve pain medication, knew that he would be denied that medication if he was accused of abusing other medication, but make the accusation anyway. Even if the court were to construe the plaintiff's statement about Demers being "on this crank mode" as an allegation that Demers issued the conduct report knowing that it would result in the plaintiff losing his pain medication—a stretch—the plaintiff did not appeal the disciplinary disposition. He submitted an inmate complaint through the ICRS, but that complaint could challenge only procedural errors. He could not use the ICRS complaint to challenge the disposition he received or the content of the conduct report. Because the plaintiff failed to challenge the truthfulness of the allegations in the conduct report "in the place, and at the time, the prison's administrative rules require," Pozo, 286 F.3d at 1025, he failed to exhaust his available administrative remedies challenging the conduct report and Demers's alleged knowing issuance of a report that would result in the plaintiff being deprived of his pain medication.

### 2. *Conduct Report No. 3149816*

The plaintiff signed the notice of Conduct Report No. 3149816 and agreed to accept an uncontested major disposition. Dkt. No. 73-1 at 3. By doing so, he waived his right to a disciplinary hearing on the conduct report and waived his right to appeal the disposition to the warden. Wis. Admin. Code §DOC 303.78(5);

14

see <u>Prude v. Meli</u>, No. 17-CV-336-SLC, 2020 WL 1984321, at *3 (W.D. Wis. Apr. 27, 2020) ("An uncontested disposition is essentially a plea agreement: the inmate agrees to the charges in the conduct report, accepts the offered punishment, and bypasses the need for a disciplinary hearing.").

Again, the proper place and time to raise a challenge to the substance of the conduct report was at the disciplinary hearing and, if warranted, on appeal to the warden. The plaintiff agreed to the uncontested major disposition, waiving his right to challenge the conduct report at a hearing and to appeal the disciplinary disposition. The plaintiff gave up his opportunity to contest the conduct report. He could not use the ICRS to challenge the conduct report or the disciplinary disposition he received. He failed to exhaust the administrative remedies for his claim that Sankey fabricated information in conduct report 3149816.

3.   *The Plaintiff's Response*

The plaintiff has contested several aspects of the defendants' motion and brief. The court suspects that some of the plaintiff's arguments may be based on a misunderstanding of the procedural history of the case. Others are a bit perplexing.

In his response to the defendants' proposed findings of fact, the plaintiff asserts that he "cannot admit or deny" several of the defendants' proposed facts, including whether he was found guilty of the rule violations in conduct report 3150416, whether he failed to appeal that disposition or whether he agreed to the uncontested disposition for conduct report 3149816. Dkt. No. 79 at ¶¶4–5, 7–8. He asserts that "he has not been provided complete and legible copies of relevant documents related thereto." <u>Id.</u> In his brief in opposition to the motion for

summary judgment, the plaintiff asserts that "the documents submitted by defendants in support of their motion are illegible, incomplete and have yet to be produced to [the plaintiff] in their original form," dkt. no. 76 at 1; he asserts that "[t]he document submitted by defendants in support of their motion for partial summary judgment concerning the disposition of" the conduct report Demers issued "is incomplete, portions are unsigned, and in that document, [the plaintiff] contends that he is not admitting any guilt related to the offense," dkt. no. 76 at 4. The plaintiff also asserts that the document "has never been provided to [the plaintiff] or his counsel prior to this time." Id.

The court finds these assertions perplexing. The defendants filed in support of their motion a document titled "Major Disciplinary Hearing," showing a hearing date of July 19, 2018, identifying the conduct report by its number, explaining the reasons for the decision and bearing the signatures of Captain Westra (the hearing officer) and COII K. Sonntag (the staff member who provided the document to the plaintiff in 2018). Dkt. No. 73 at 4-5. The document appears complete and is legible.

The plaintiff asserts in his brief in opposition that the court cannot rely on the documents the defendants filed in deciding the motion for summary judgment because the defendants did not previously provide the documents to the plaintiff. Dkt. No. 76 at 1. But as the defendants point out, the conduct reports and report from the disciplinary hearing contain a signature from the staff member who delivered the reports to the plaintiff in July and August 2018. Dkt. No. 80 at 5–6; Dkt. No. 73 at 2, 5; Dkt. No. 73-1 at 2. The plaintiff has not argued that he never

received these documents. The plaintiff signed the notices of the conduct reports. Dkt. No. 73 at 3; Dkt. No. 73-1 at 3.

Perhaps the plaintiff is alleging that the defendants have not provided him with these documents in discovery during this litigation. After counsel graciously agreed to represent the plaintiff, Judge Duffin amended the scheduling order, setting a discovery deadline of July 31, 2021 and a dispositive motion deadline of August 31, 2021. Dkt. No. 67. After the defendants filed their motion for partial summary judgment, this court suspended those deadlines. Dkt. No. 75. So it may well be that the defendants had not, at the time they filed the motion for partial summary judgment, provided the plaintiff with the documents the defendants filed in support of that motion. But the defendants' brief, proposed facts and attached documents total only eighteen pages. Dkt. Nos. 70–73. The materials are legible and complete. If, when the plaintiff received them, he realized that the supporting documents had not been provided in discovery, he could have asked the court to suspend briefing until he could confer with the defendants and obtain the documents he needed. And it is not clear why he needed them in "their original form" to respond to the defendants' motion. The court sees nothing unfair or prejudicial about the defendants relying on the plaintiff's disciplinary appeals records in support of their motion for summary judgment.

The plaintiff asserts that his complaints have been met with "nothing but delay and obfuscation." Dkt. No. 76 at 2. He asserts that the defendants "did not file an answer" to the plaintiff's complaint "until September 10, 2019." Id. That is true, but the defendants would not have known that there was a complaint to which they were required to respond until after the court completed the screening

process and ordered service on the defendants. 28 U.S.C. §1915A(a). The court did not screen the plaintiff's complaint (actually, by that time, his amended complaint) until July 12, 2019, due to the court's heavy caseload; that delay is entirely the court's responsibility. Dkt. No. 14. It was only when the court issued the screening order that it ordered the amended complaint served on the defendants. Id. at 11. The defendants accepted service on August 16, 2019, dkt. no. 17, and defense counsel made their appearances the same day, dkt. nos. 16, 18. The defendants filed their answer on September 10, 2019—less than thirty days after they accepted service and, as required by Fed. R. Civ. P. 12(a)(1)(A), within sixty days of the date of the screening order. Dkt. No. 21.

The plaintiff expresses concerns about how the defendants responded to the plaintiff's *pro se* discovery demands. Dkt. No. 76 at 2. In the court's experience, it is not unusual for defendants in cases involving incarcerated plaintiffs who make claims of deliberate indifference to serious medical need to review the plaintiff's medical records before responding to discovery requests. Nor is it unusual for defendants in such cases to object to self-represented plaintiffs' discovery demands; many incarcerated plaintiffs, lacking legal training, make broad or vague or disproportionate discovery requests. In this case, for example, Judge Duffin denied the plaintiff's *pro se* motion to compel. Dkt. No. 47 at 2-4.

The remainder of the plaintiff's response focuses on information that is not related to the exhaustion issue. He makes assertions about the merits of the case, including an assertion that Demers and Sankey "would not provide" the plaintiff with the pain medication. Dkt. No. 76 at 3–4 ("[F]rom the records provided by WCI [Waupun Correctional Institution] to date, it appears the staff at WCI, which

includes defendants Demers and Sankey, took matters into their own hands and would not provide [the plaintiff] with his pain medication, despite a refill request that increased his Pregabalin prescription from 100 mg to 150 mg."). But the plaintiff did not allege in his second amended complaint that Demers and Sankey personally deprived him of his Pregabalin. He alleged that the officers knowingly issued conduct reports which led to *Dr. Manlove* discontinuing the plaintiff's Pregabalin. The plaintiff points to other potential questions of fact related to the discontinuation of his Pregabalin. Id. at 6–7. The defendants' motion is not based on the merits of the plaintiff's claims; it concerns only whether the plaintiff exhausted his administrative remedies before filing this lawsuit. The court cannot address the merits of the plaintiff's claims against Demers and Sankey if he did not first properly exhaust his administrative remedies, even if the merits favor him. See Perez, 182 F.3d at 536 (noting that where the defendants raise the issue of exhaustion, a district court "must not proceed to render a substantive decision until it has first considered § 1997e(a)").

Similarly, the plaintiff notes that he filed an inmate complaint through the ICRS alleging that his Pregabalin was wrongly discontinued. Dkt. No. 76 at 7–8; see Dkt. No. 84 at 11. But as the court has explained, the issue the plaintiff raised in the inmate complaint was not the same issue he raised in his second amended complaint. The second amended complaint concerns the officers' alleged actions (issuing a conduct report that they had reason to know would result in the plaintiff being deprived of necessary pain medication). But the inmate complaint concerns the *consequences* of the officers' actions (discontinuation of the plaintiff's Pregabalin). Whether the plaintiff exhausted the ICRS process

19

challenging the *consequences* of the officers' alleged actions is irrelevant to the question of whether he exhausted his administrative remedies challenging the officers' actions themselves.

The plaintiff had a mechanism for challenging the conduct reports—a disciplinary hearing and appeal. The plaintiff offers no evidence showing that he appealed the disciplinary disposition he received from the first conduct report. The plaintiff may not have known at the time of his hearing that his Pregabalin had been discontinued. But he did know that he had received a conduct report and that he disagreed with the allegations in the report. By not appealing the disciplinary disposition he received, the plaintiff failed to exhaust the prison's administrative remedies for challenging the first conduct report.

The plaintiff accepted an uncontested major disposition for the second conduct report, admitting his guilt to the information in the report. That he later changed his mind and decided to challenge the conduct report does not remedy his failure to timely exhaust. To exhaust his administrative remedies, he needed to contest that information during a disciplinary hearing and appeal any adverse decision. He did neither of those things, waiving a hearing and appeal, which also waived his opportunity to challenge the second conduct report.

The defendants have met their burden to show that the plaintiff failed to exhaust his administrative remedies related to his claim that Demers and Sankey issued conduct reports that they had reason to know would result in the deprivation of the plaintiff's needed medication. The plaintiff has not presented any evidence showing that he properly challenged or appealed either disciplinary disposition. Because the plaintiff failed to exhaust his administrative remedies for

this claim, the court must dismiss it without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice").

## III.    Conclusion

The court **GRANTS** the defendants' motion for partial summary judgment. Dkt. No. 69. The court **DISMISSES WITHOUT PREJUDICE** the claim against defendants Demers and Sankey.

Because there are no exhausted claims against Demers and Sankey, the court **ORDERS** that Demers and Sankey are **DISMISSED** as defendants.

The court will issue a separate order setting new deadlines for completing discovery and for filing dispositive motions.

Dated in Milwaukee, Wisconsin this 17th day of September, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

21